**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LINTECH GLOBAL, INC.,                    Civil Action No. 21-cv-10316

        Petitioner,                    Arthur J. Tarnow
                                  United States District Judge

v.

                                  David R. Grand
VERSAPRO GROUP, LLC,                    United States Magistrate Judge

        Respondent.
_____/

### REPORT AND RECOMMENDATION ON PETITIONER'S MOTION TO ENFORCE JUDGMENT AND HOLD RESPONDENT IN CONTEMPT OF COURT (ECF No. 6) AND ON RESPONDENT'S MOTION FOR RULE 11 SANCTIONS AGAINST PETITIONER AND ITS ATTORNEYS (ECF No. 30)

The dispute in this civil action should have been easy enough for petitioner LinTech Global, Inc. ("LinTech") and Versapro Group, LLC ("VPG") to have resolved without the Court's involvement. After slogging through a two-year arbitration in which the arbitrator, Larry Saylor, Esq. (the "Arbitrator"), denied both sides' substantive claims against each other, the parties are now before the Court solely because they cannot agree as to whether certain of LinTech's documents are "proposals" – to use the Arbitrator's term – that VPG has been enjoined from possessing and using.

This led LinTech to file a motion to hold VPG in contempt of court for failing to return and/or destroy the documents in question (ECF No. 6), and VPG to file a motion for Rule 11 sanctions against LinTech and its counsel (ECF No. 30). Both of these motions have been referred to the undersigned for a Report and Recommendation pursuant to 28

U.S.C. § 636(b)(1)(B).  The Court held oral argument on October 13, 2021.  For the reasons stated below, the Court **RECOMMENDS** that LinTech's motion **(ECF No. 6)** be **GRANTED IN PART AND DENIED IN PART**, and that VPG's motion **(ECF No. 30)** be **DENIED**.

## I.       FACTUAL AND PROCEDURAL BACKGROUND

### A.       *The Parties and Their Business Relationship*

This action began as an arbitration between LinTech and VPG.  Petitioner LinTech is a prime contractor that regularly bids on, and receives, federal government contracts in the information technology industry.  Starting in 2013, respondent VPG served as a subcontractor for LinTech on some of LinTech's government projects, including for the Department of Defense ("DOD").  LinTech sometimes bid on projects on its own, without a subcontractor.  One such bid was for the Defense Enterprise Accounting and Management System ESA 2 ("DEAMS ESA 2") project, which the DOD awarded to LinTech on February 2, 2018.

In July 2017, LinTech hired Seascape Consulting, LLC ("Seascape"), whose sole member is Nate Owens, to perform "consulting services" on the DEAMS ESA 2 project bid.  However, apparently unbeknownst to LinTech, in March 2015, Seascape had entered into a Master Services Agreement ("MSA") with VPG in which Seascape agreed it would "limit its performance of services to [VPG] exclusively during the term of this agreement unless approved in writing . . . [and would not] work for a competing company . . . on any competing opportunities or provide proprietary information for a period of one year after termination" of the MSA.  Moreover, pursuant to the MSA, Owens served as VPG's

Director of Business Development and its de facto Chief Operating Officer.   When Seascape and Owens agreed to perform consulting work for LinTech, they represented and warranted that "entering into this Agreement does not violate any agreements or policies of any firm, entity or organization to which he is bound or to which he expects to become bound."

On February 13, 2018, Owens resigned from VPG, offering VPG a one year transition period.   However, one of VPG's owners, Les Burleson, terminated Owens on February 20, 2018.   After Owens' termination from VPG, VPG "accessed a DropBox account that was registered to Owens' VersaProGroup.com email address, and found it contained LinTech proposals or drafts.   Ex. R-40, R-42, R-44, C-122) and a DOD PowerPoint titled 'DEAMS ESA 2 Post Award Debrief for LinTech' (Ex. R-45)."   (ECF No. 6-2, PageID.102).

### B.    The Arbitration Action

Disputes arose between the parties, and on June 3, 2019, VPG filed a Demand for Arbitration alleging that LinTech violated a partnership or right of first refusal agreement, breached non-solicitation agreements, and tortiously interfered with VPG's contact with Seascape.   LinTech filed a counterclaim in the arbitration action alleging that VPG had breached its subcontractor agreement and misappropriated certain LinTech trade secrets and confidential information.   Arbitrator Larry Saylor (the "Arbitrator") presided over a week-long evidentiary hearing, and issued an Award of Arbitrator on January 25, 2021 (the "Award").   (ECF No. 6-2).   The Arbitrator found that each of VPG's claims lacked merit, and that LinTech's breach of contract counterclaim also lacked merit.

The Arbitrator also ruled on LinTech's misappropriation of trade secrets claim, finding that VPG had not misappropriated LinTech's trade secrets, but that "VPG's possession of **LinTech's _proposals and draft proposals_**, **and the DOD debriefing regarding LinTech's DEAMS ESA 2 proposal**, threatens misappropriation of LinTech's trade secrets . . ."  (ECF No. 6-2, PageID.112) (emphasis added).   In reaching this conclusion, the Arbitrator explained, "**The proposals and debriefing []** contain formatting, verbiage and data that was compiled at considerable expense to LinTech, that is of substantial value to LinTech, that could be of significant value to VPG or others in bidding on government information technology contracts, and that is not readily ascertainable by others to whom it may be of value.  I therefore find that they contain trade secrets protected under MUTSA." (*Id.*, PageID.111) (emphasis added).  Accordingly, the Arbitrator ordered that within 30 days of the Award, VPG was required to: (1) "return to LinTech any and all hard copies and delete any electronic copies of the following documents in VPG's possession or control . . .: **LinTech's proposals, drafts thereof, and the DOD debriefing regarding LinTech's DEAMS ESA 2 proposal**" (collectively, the "Trade Secret Documents"); (2) "certify to LinTech that all hard copies of such documents have been returned and all electronic copies have been deleted;" and (3) make no use or disclosure of those documents or the information contained therein . . ." (*Id.*) (emphasis added) (collectively, the "Trade Secret Protections").  The Arbitrator went on to write, "[w]hile LinTech asserts that **other documents VPG recovered from the Owens DropBox** also contain its trade secrets, LinTech has failed adequately to identify any alleged trade secrets they contain.  LinTech's request for injunctive relief involving any **other documents** is

therefore denied." (*Id.*) (emphasis added). Unfortunately, the Arbitrator did not define the term "proposals" or specifically identify any "other documents."

### C.   VPG's Post-Arbitration Compliance with the Trade Secret Protections

Just four days after the Award was issued, LinTech wrote to VPG asking it to confirm that it will certify its "return and destruction of all trade secrets, as required by the injunction . . ." (ECF No. 6-19). LinTech went on to specify the following 15 documents that it contended were Trade Secret Documents subject to the Award's injunction:

1. Exhibit R-40: Lintech DEAMS ESA 2 Proposal

2. Exhibit R-42: Lintech Capabilities Statement[1]

3. Exhibit R-44: Lintech DEAMS ESA 2 Proposal

4. Exhibit R-45: DEAMS ESA 2 Post Award Governmental Debriefing to Lintech

5. Exhibit R-50: Lintech RFQ Documents

6. Exhibit R-51: Lintech RFQ Documents

7. Exhibit R-52: Lintech RFQ Documents – Metadata

8. Exhibit C-54: Lintech Capabilities Statement

9. Exhibit C-121: Lintech DEAMS ESA 2 Proposal

10. Exhibit C-122: Lintech USAF AFLCMC Proposal

---

[1] In its motion, LinTech indicates that R-42 is Exhibit 4 to the motion. (ECF No. 6, PageID.81). And, when LinTech filed R-42 in unredacted form, it similarly identified the document as "Exhibit 4." (ECF No. 14, PageID.486). While VPG's response brief clearly accepts that R-42 is Exhibit 4, in LinTech's reply brief, it mistakenly states that Exhibit 4 is "R-44." (ECF No. 12, PageID.459; ECF No. 29, PageID.694). This clarification is important because R-42 is a critical document to the Court's analysis.

11. Exhibit C-123: Lintech ERP and IT Capabilities Brief[2]

12. Exhibit C-124: Lintech Capabilities Statement

13. Exhibit C-132: Lintech Capabilities Statement

14. Exhibit C-199: DEAMS ESA 2 Post Award Governmental Debriefing to Lintech

15. Exhibit C-206: Lintech Capabilities Statement.

(*Id.*).[3]  In addition, LinTech wrote:

> Be advised that the above list is not an exhaustive list of the Lintech trade secrets VPG and your office are obligated to return and destroy pursuant to the Injunction.  During the arbitration hearing, [one of LinTech's owners] Mr. McGinley provided a printed copy of a Lintech trade secret (later marked Exhibit R50).  VPG never divulged that it possessed this Lintech trade secret until the hearing itself.  All of this is to say that VPG appears to possess additional Lintech trade secrets that VPG has not revealed to Lintech.  This appearance is corroborated by VPG testimony confirming that VPG owners removed Lintech documents from DropBox.

(*Id.*).

Instead of specifically addressing, one way or the other, any of the 15 Documents,

VPG responded, coyly:

> VPG has complied with the following directive from the Arbitrator.

> Within 30 days of this award, VPG must return to LinTech any and all hard copies and delete any electronic copies of the following documents in VPG's possession or control . . . LinTech's proposals, drafts thereof, and the DOD debriefing regarding LinTech's DEAMS

---

[2] The cover page to this particular exhibit mistakenly references "C-122."  (ECF No. 23, PageID.601).  However, there seems to be no dispute that this document is actually C-123.  (ECF No. 6, PageID.82 (referencing "Capabilities Brief"); ECF No. 12, PageID.461 (also referencing "Capabilities Brief")).

[3] The Court will refer to these documents as the "15 Documents."

> ESA 2 proposal; certify to LinTech that all hard copies of such documents have been returned and all electronic copies have been deleted; and make no use or disclosure of those documents or the information contained therein; . . .

(ECF No. 6-20).

VPG's vague response left LinTech completely in the dark about whether VPG contended that any of the 15 Documents were not Trade Secret Documents or whether it still possessed any of those documents.[4]  This led LinTech to again write VPG, stating, "Your letter is incredibly evasive.  To avoid imminent escalation, please address my letter and the [15 Documents] referenced therein.  Your letter does not address any of those items."  VPG did not respond.

### D.    *The Instant Action and the Parties' Competing Motions*

Instead of taking the most logical, simplest, quickest, and least expensive route to resolving this issue –asking the arbitrator to clarify the meaning of the term "proposals" in the Award and whether it included any of the 15 Documents, on February 11, 2021, LinTech commenced this action by filing its Unopposed Petition and Motion to Confirm Arbitration Award pursuant to 9 U.S.C. § 9.  (ECF No. 1).  With no other substantive filings on the docket, on April 4, 2021, the Honorable Arthur J. Tarnow entered a "Judgment and Injunction" that confirmed the Award and included an injunction that tracked verbatim the one in the Award.  (ECF No. 5).  Again, VPG was ordered to "return to Lintech any and

---

[4] In later briefing on these issues, VPG concurs that six of the 15 Documents are "trade secrets" to which the Trade Secret Protections apply.  (ECF No. 12, PageID.442, 459).  In light of VPG's "certification," the Court will limit its discussion to the remaining nine documents; six LinTech Capabilities Statements and three LinTech "RFQ" documents.  (*Id.*; ECF No. 29, PageID.694).

all hard copies, and delete any electronic copies of, the following documents in VPG's possession or control, including but not limited to copies in the possession of VPG's attorneys, experts, consultants, employees, officers or contractors: Lintech's proposals, drafts thereof, and the DOD debriefing regarding Lintech's DEAMS ESA 2 proposal; b. certify to Lintech that all hard copies of such documents have been returned and all electronic copies have been deleted; and c. make no use or disclosure of those documents or the information contained therein . . ." (*Id.*, PageID.64).

On June 3, 2021, LinTech filed its "Motion to Enforce Injunction and to Hold [VPG] in Contempt of Court." (ECF No. 6). In that motion, LinTech argues:

> Over the course of the arbitration proceedings, it became clear to the participants, including Arbitrator Larry Saylor, that VPG illicitly possessed a number of Lintech's proprietary, confidential trade secrets pertaining to Lintech's federal contract proposals and related documents exchanged between Lintech and the federal government for federal IT work. **Exhibit 3-17** [i.e., the 15 Documents]. Accordingly, Arbitrator Saylor ordered VPG to destroy those documents, specifically Lintech's "proposals and draft proposals, and the DOD debriefing regarding LinTech's DEAMS ESA 2 proposal."

(ECF No. 6, PageID.87) (emphasis in original).

However, LinTech's motion was essentially supported only by the Award and the documents at issue; LinTech did not provide the multi-day hearing transcript or meaningfully address hearing testimony that bears on the ultimate issue at hand – whether the 15 Documents are or are not "proposals." In short, LinTech's bare-bones argument is: "the Arbitrator said 'proposals' and the 15 Documents are proposals." Thus, LinTech's briefing on its motion provided the Court with very little context to understand the Arbitrator's consideration of the trade secret issue.

Moreover, LinTech's assertions that VPG "stole" the Trade Secret Documents and that it was "clear" to Arbitrator Saylor that VPG "illicitly" possessed them are belied by the Arbitrator's finding that "***VPG acted lawfully in accessing*** the DropBox account after Owens' resignation and that ***VPG and its counsel acted properly in retaining*** copies of the documents pending the conclusion of this arbitration."  (ECF No. 6, PageID.79, 87; ECF No. 6-2, PageID.111) (emphasis added).

For its part, rather than simply presenting its position on the issue, VPG not only responded by incessantly characterizing the behavior of LinTech and its counsel as "brazen," "blatant," and "intentional," but doubled down by filing a motion for Rule 11 sanctions against LinTech and its counsel that merely regurgitated the contents of its response brief.  (ECF Nos. 12, 30).  The only new argument VPG made – and virtually the only one between the two sides that reflects any meaningful synthesis of the underlying evidence applied to the issue at hand[5] – wasn't presented until VPG filed its reply brief in support of its Rule 11 motion, when it provided hearing testimony in which both LinTech's and VPG's owners seemed to agree that "capabilities statements" and "proposals" could colloquially be used interchangeably, but could also refer to different types of submissions. (ECF No. 34, PageID.789-90).

Because VPG raised this argument for the first time in its Rule 11 motion reply brief, LinTech filed a motion for leave to file a sur-reply.  (ECF No. 35).  That motion is appropriate under the circumstances, and the Court will grant it.

---

[5] Indeed, both parties failed to recognize that the Arbitrator repeatedly referred to one of the disputed documents, R-42, as a "proposal – an issue the Court discusses in detail below.

## II.   **APPLICABLE STANDARDS**

### A.   *Civil Contempt*

"A litigant may be held in contempt if his adversary shows by clear and convincing evidence that 'he violate[d] a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'"  *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987) (quoting *SEC v. First Financial Group of Texas, Inc.*, 659 F.2d 660, 669 (5th Cir. 1981)).  *See also Workers Pension Tr. Fund of Local Union # 58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003).  "A court must resolve any ambiguities in the prior order in favor of the party charged with contempt." *Reynolds & Reynolds Co., Inc. v. Alan Vines Auto. of Jackson, LLC*, No. 1:20-MC-0003-STA, 2021 WL 765775, at *2 (W.D. Tenn. Feb. 26, 2021) (citing *Paterek v. Village of Armada, Mich.*, 801 F.3d 630, 643 (6th Cir. 2015). *See also See Grace v. Ctr. for Auto Safety*, 72 F.3d 1236, 1241 (6th Cir. 1996).  Moreover, while the Court's contempt power is within the Court's sound discretion, that power "should not be used lightly." *Gary's Elec.*, 340 F.3d at 378.  *See also In re Lane*, No. 20-5399, 2020 WL 9257958, at *2 (6th Cir. Dec. 22, 2020) ("Contempt is a serious power and should be exercised with caution, using the "least possible power adequate to the end proposed.").  "With respect to civil contempt proceedings, '[j]udicial sanctions ... may, in a proper case, be employed for either or both of two purposes; to coerce the [individual] into compliance with the court's order, and to compensate the complainant for losses sustained.'"  *Id.* at 379 (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)).

### B.    *Rule 11 Sanctions*

The Honorable Robert H. Cleland recently explained the standards applicable to a

motion for Rule 11 sanctions:

> "By presenting to the court a pleading ... [an] unrepresented party
> certifies that to the best of the person's knowledge ... [the] claims,
> defenses, and other legal contentions are warranted by existing law or
> by a nonfrivolous argument." Fed. R. Civ. P. 11(b)(2). . . . Sanctions
> are appropriate if "the court determines that Rule 11(b) has been
> violated." Fed. R. Civ. P. 11(c)(1).  "A sanction ... must be limited to
> what suffices to deter repetition of the conduct or comparable conduct
> by others similarly situated." Fed. R. Civ. P. 11(c)(4).
>
> The decision to award Rule 11 sanctions is within the discretion of the
> court.  *Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 419 (6th
> Cir. 1992).  A court should consider "whether an individual's conduct
> was reasonable under the circumstances."  *Union Planters Bank v. L
> & J Dev. Co.*, 115 F.3d 378, 384 (6th Cir. 1997).  Courts use an
> objective standard of what a reasonable attorney would have done.  *In
> re Triple S Restaurants, Inc.*, 519 F.3d 575, 579 (6th Cir. 2008).  A
> party or attorney's good-faith belief in the merits of a case is not enough
> to avoid Rule 11 sanctions.  *Tahfs v. Proctor*, 316 F.3d 584, 594 (6th
> Cir. 2003).
>
> Courts consider several factors when deciding whether sanctions are
> warranted.  These factors include "[w]hether the improper conduct was
> willful, or negligent; ... whether it infected the entire pleading, or only
> one particular count or defense; ... what effect it had on the litigation
> process in time or expense; whether the responsible person is trained
> in the law; what amount, given the financial resources of the
> responsible person, is needed to deter that person from repetition in the
> same case; what amount is needed to deter similar activity by other
> litigants."  Fed. R. Civ. P. 11 advisory committee's note to 1993
> amendment.

*Dobronski v. Alarm Mgmt. II, L.L.C.*, No. 18-11055, 2020 WL 6780267, at *2–3 (E.D.
Mich. Nov. 18, 2020).

## III.   ANALYSIS

### A.    *R-42 is a "Proposal" or "Draft thereof"*

The Court will focus initially on R-42, which is a "Capabilities Statement" for a non-DEAMS ESA 2 project.  Why focus on this document?  Because, while neither of the parties picked up on this in their briefing, in three separate instances in the Award, the Arbitrator specifically referred to R-42 as one of LinTech's "proposals."   First, in the Award's background discussion, the Arbitrator wrote, "VPG then accessed a DropBox account that was registered to Owens' VersaProGroup.com email address, and found it contained **LinTech proposals or drafts** (Ex. R-40, ***R-42***, R-44, C-122) . . ."  (ECF No. 6-2, PageID.102) (emphasis added).  Second, in discussing LinTech's misappropriation of trade secrets argument, the Arbitrator wrote, "LinTech alleges that VPG misappropriated its trade secrets when, after Owens' resignation in February 2018, VPG accessed a DropBox that had been maintained under Owens' VPG email address and found LinTech's DEAMS ESA 2 proposal (Ex. R-40), ***other LinTech proposals (Ex. R-42*** and C-122), DOD's debriefing regarding LinTech's DEAMS ESA 2 proposal (Ex. R-45), ***<u>and other LinTech documents containing its alleged trade secrets</u>*** ."  (ECF No. 6-2, PageID.110) (emphasis added).[6]  Third, the Arbitrator wrote, "LinTech took steps to protect the secrecy of ***its proposals***.  ***LinTech's proposals*** are marked 'LinTech Global – Proprietary' on each page.  (See Ex. R-40, ***R-42***, R-44, C-122)."  (ECF No. 6-2, PageID.111) (emphasis added).

Moreover, in the Award's very next paragraph, the Arbitrator described the content of the referenced "proposals," explaining that they "contain formatting, verbiage and data that was compiled at considerable expense to LinTech, that is of substantial value to

---

[6] This sentence makes clear that the Arbitrator considered R-42 to be a "proposal" distinguishable from "other LinTech documents."

LinTech, that could be of significant value to VPG or others in bidding on government information technology contracts, and that is not readily ascertainable by others to whom it may be of value," and that therefore these documents "contain trade secrets protected under MUTSA." (*Id.*).  A review of R-42 shows that its contents are consistent with the Arbitrator's description.  (ECF Nos. 14).

R-42 is a detailed, 7-page narrative "Capabilities Statement" that LinTech submitted (or was drafting to submit) in connection with a non-DEAMS ESA 2 government project. (ECF No. 14).  Indeed, the document concludes by stating, "LinTech would like to thank the DISA DITCO-Scott and DSCA *for the opportunity to submit our response* to the sources sought for BRATSS.  . . . *LinTech has the financial stability, process methodologies, internal training programs, team readiness, and extensive previous financial management work experience* with the DSCA, DSCA directorates, foreign military sales community, Security Cooperation Offices, COCOMs, and performing entities as well as civilian government agencies *to provide all services needed for this contract*." (*Id.*, PageID.493) (emphasis added).  Pages 2-7 of this document provide details about LinTech's experience in those areas and each of those pages states, "LINTECH GLOBAL ◊ PROPRIETARY" and "Use of disclosure of data on this sheet is subject to restrictions on the title page of this Capabilities Statement."  R-42's cover page states, "This Statement of Interest includes data that shall not be disclosed outside the Government and shall not be duplicated, used, or disclosed – in whole or in part – for any purpose other than to evaluate this presented material." (*Id.*, PageID.487).  The document gives two points of contact: (1) Michael Lin, LinTech's President; and (2) Regis Leiss, "Senior

*Proposal Manager*." (*Id.*) (emphasis added). Again, it is fair to say that R-42 "contain[s] formatting, verbiage and data that was compiled at considerable expense to LinTech, that is of substantial value to LinTech, that could be of significant value to VPG or others in bidding on government information technology contracts, and that is not readily ascertainable by others to whom it may be of value." (ECF No. 6-2, PageID.111).

In sum, the Arbitrator specifically referred to R-42 as one of "LinTech proposals or drafts" in three different places in the Award, and the document's content fits the Arbitrator's description of "trade secrets" entitled to protection under MUTSA. Therefore, R-42 is a Trade Secret Document subject to the Trade Secret Protections and the court-ordered injunction.

VPG did not address the fact that the Arbitrator had specifically referred to R-42 as a "proposal," and instead made counter-arguments that are broad in scope. At least as applied to R-42, those arguments are unconvincing. First, VPG argues:

> Both the Award and the Judgment and Injunction protect one small subset of Lintech documents: "LinTech's **proposals, drafts thereof, and the DOD debriefing regarding LinTech's DEAMS ESA 2 proposal**" and nothing more. (ECF No. 6-2, PageID.112; ECF No. 5, PageID.64).
>
> In other words, two conditions must be met for a Lintech document to be subject to the Injunction. First, the document must be a "proposal," a "draft" of a proposal, or a "debriefing." Second, such document must be "regarding LinTech's DEAMS ESA 2 proposal."

(ECF No. 12, PageID.452 (emphasis in original); *see also id.*, PageID.457 ("In other words, the document must be: (1) a "proposal," a "draft" of a proposal, or a "debriefing," and (2) "regarding LinTech's DEAMS ESA 2 proposal.")).

### *No Requirement to be a "DEAMS ESA 2" Document*

The salient sentence in the Award is the Arbitrator's finding that "VPG must return to LinTech any and all hard copies and delete any electronic copies of the following documents in VPG's possession or control . . .: LinTech's proposals, drafts thereof, and the DOD debriefing regarding LinTech's DEAMS ESA 2 proposal."  (ECF No. 6-2, PageID.112).  Both a plain reading of this sentence, and its consideration in the context of the entire Award, belies VPG's arguments.

LinTech's interpretation reads into the salient sentence words that simply aren't there.  LinTech reads the salient sentence as if it included the following bolded verbiage:

> VPG must [return and delete] . . . LinTech's **DEAMS ESA 2** proposals, drafts thereof, and the DOD debriefing regarding LinTech's DEAMS ESA 2 proposal.

But the Arbitrator did not limit the Trade Secret Protections to "DEAMS ESA 2 proposals," and instead wrote that they applied to "LinTech's proposals."  Moreover, it simply makes no sense to construe the clause, "regarding LinTech's DEAMS ESA 2 proposal" as modifying the earlier clauses in that sentence, as the sentence would then require VPG to return/delete all "proposals . . . regarding LinTech's DEAMS ESA 2 proposal."[7]  There is no indication that the Arbitrator intended such a redundancy, and if he meant to limit the Trade Secret Documents as VPG suggests, he easily could have

---

[7] Yet, this "proposal regarding a DEAMS ESA 2 Proposal" argument is precisely the one urged by VPG.  (ECF No. 30, PageID.722-23) ("two conditions must be met for a Lintech document to be subject to the Injunction.  First, the document *must be a 'proposal,'* a 'draft' of a proposal, or a 'debriefing.'  Second, such document must be *'regarding LinTech's DEAMS ESA 2 proposal.'"*) (emphasis added).

written that the Trade Secret Protections applied to "LinTech's DEAMS ESA 2 proposal, drafts thereof, and the DOD debriefing regarding that proposal."

Finally, and most simply, there is no getting around that fact that the Arbitrator repeatedly referred to R-42 as one of LinTech's "proposals," and VPG admits that R-42 is unrelated to the DEAMS ESA 2 project.  (ECF No. 12, PageID.459 ("Exhibit 4 [i.e., R-42] is . . . not a DEAMS ESA 2 document . . .").  It thus cannot be that the Arbitrator intended the term "proposals" to refer only to DEAMS ESA 2 proposals.

### *R-42 is a "Proposal" as the Arbitrator Used that Term*

VPG's other argument, that R-42 is not a "proposal," applies too narrow an interpretation of that term.  VPG asserts, "Exhibit 4 [i.e., R-42] is neither a proposal, or draft thereof . . . – it is a "Capabilities Statement."  (ECF No. 12, PageID.459).  Again, VPG's argument ignores that in three separate instances, the Arbitrator specifically referred to R-42 as a "proposal."  *See supra* at 8-9.  Moreover, in one of those instances, the Arbitrator expressly distinguished between R-42 and "other LinTech documents."  *See supra* at 12.  It is only the latter category that the Arbitrator found not subject to the Trade Secret Protections.

In sum, the Arbitrator considered R-42 to be one of "LinTech's proposals" subject to the Trade Secret Protections.[8]  At a minimum, VPG's retention of that document and

---

[8] The foregoing analysis dooms VPG's Motion for Rule 11 Sanctions.  (ECF No. 30).  That motion's very premise is the same, "proposal regarding a DEAMS ESA 2 Proposal" argument discussed above.  (ECF No. 30, PageID.722-23).  Again, at a minimum, R-42 is a "proposal" that the Arbitrator found is entitled to the Trade Secret Protections.  Accordingly, VPG's Motion for Rule 11 Sanctions **(ECF No. 30)** should be **DENIED**.

refusal to certify its destruction violated the Arbitrator's ruling and the court-ordered injunction. The Court will address the contempt sanctions issue below, but in light of the foregoing, the Court should find that its injunction applies to R-42, and VPG should be ordered to return all hard copies, and to delete all electronic copies of this document, to specifically certify its compliance with that order, and to make no use or disclosure of the document or information contained therein.

### B.    Other Disputed Documents

The Court thus turns to whether any of the other eight documents in question are "LinTech's proposals" or "drafts thereof" that are subject to the Trade Secret Protections and court-ordered injunction.[9]  These documents fall into two categories, additional LinTech Capabilities Statements (C-54, C-123, C-124, C-132, C-206 (collectively, the "Other Capabilities Statements")) and LinTech RFQ responses (R-50, R-51, and R-52 (collectively, the "RFQ Documents")).

### i.    Other Capabilities Statements

Because the Arbitrator's decision does not mention any of these documents, the analysis is more involved as to them.  Yet, much of the Court's analysis of R-42 applies here as well; if R-42 – a "Capabilities Statement" regarding a non-DEAMS ESA 2 project

---

[9] There is no dispute that none of the remaining eight documents were related to LinTech's DEAMS ESA 2 proposal.  As discussed above, however, contrary to VPG's argument, that fact alone does not mean the documents are not Trade Secret Documents.

is a "proposal," then the mere fact that the Other Capabilities Statements don't have the term "proposal" in their title and don't relate to the DEAMS ESA 2 project, does not mean they cannot be "proposals" as the Arbitrator used that term.

The Other Capabilities Statements are very similar in nature to R-42 in terms of their content and purpose.  For example, C-54 provides a detailed description of LinTech's past projects, experience, and specific areas of expertise.  (ECF No. 20).  It concludes with essentially identical verbiage found in R-42, and thanks the recipient "for the opportunity to submit our response to the sources sought . . ."  (*Id.*, PageID.569; *see also supra* at 13). Moreover, C-54 lists "Regis Leiss, Senior ***Proposal Manager***," as a point of contact.  (ECF No. 20, PageID.558) (emphasis added).  The document also states, "This Capabilities Statement includes data that shall not be disclosed outside the Government and shall not be duplicated, used, or disclosed . . ."  (*Id.*).  And, like R-42, each page of C-54 states, "LINTECH GLOBAL ◊ PROPRIETARY" and "Use of disclosure of data on this sheet is subject to restrictions on the title page of this Capabilities Statement."  C-124, C-132, and C-206 have all these same attributes.  (ECF Nos. 24, 25, 27).  While C-123 is a different format, it provides similar information about LinTech and its capabilities and past projects, and most of its pages say "Proprietary Information."  (ECF No. 23).

For all of these reasons, the Court finds that the Other Capabilities Statements are essentially equivalent to R-42, which the Arbitrator referred to as a "proposal."  Thus, each can be reasonably construed as a "proposal."  There is one important caveat, though, before reaching the ultimate issue of whether the Trade Secret Protections and court injunction apply to these documents.

The Arbitrator's ruling applied to "LinTech's proposals . . ." and C-54 is a proposal submitted in conjunction with a *joint venture* effort between LinTech and VPG.  The document includes the following statements, "LinTech is partnered with VersaPro Group (VPG) in order to bring exacting industry expertise specific to large scale distance learning initiatives . . . VPG is currently engaged in numerous training development and delivery for DoD agencies . . . VPG's training and implementation experience is impressive . . . VPG supported the system integrator in the deployment of end-user training courses to approximately 40,000+ General Funds Enterprise Business Systems . . . LinTech and VPG's expertise and experience . . . along with their experience with the DSCA during the DAI ERP deployment, makes our JV uniquely qualified to provide world-class support for DISAM and its affiliated organizations . . ."  (ECF No. 20, PageID.560).  The document goes on to talk at least as much about VPG's experience and capabilities as it does LinTech's, and concludes by stating, "LinTech-VPG JV would like to thank the MOTSU and ACC-R1 for the opportunity to submit our response to the sources sought . . ."  (*Id.*, PageID.569).

Thus, while C-54 can reasonably be interpreted as a "proposal" under the Arbitrator's use of that term in the Award, it is a "LinTech-VPG JV" proposal and not a "LinTech" proposal.  Just as it makes no sense to permit VPG to retain and use LinTech's Trade Secret Documents, it would be unreasonable to prevent VPG from having access to a document that is equally focused on its performance and capabilities as it is on LinTech's.  Accordingly, the Court should not construe the Trade Secret Protections and court-ordered injunction to apply to C-54.

In sum, while the Court will address the contempt sanctions issue below, in light of the foregoing, the Court should find that its injunction applies to C-123, C-124, C-132, C-206, and VPG should be ordered to return all hard copies, and to delete all electronic copies of these documents, to specifically certify its compliance with that order, and to make no use or disclosure of these documents or the information contained therein. However, VPG should not be required to take any further action, or to refrain from taking any further action, with respect to C-54.

### ii.    *RFQ Documents*

The last category of documents at issue are the RFQ Documents – two LinTech RFQ responses (R-50 and R-51) and the underlying meta data (R-52). (ECF Nos. 9, 10, 11). These documents are similar in nature to R-42, which the Arbitrator found to a LinTech "proposal." Like R-42, these documents provide a narrative discussion of LinTech's background, capabilities, prior projects/clients, and the approach it is proposing to take regarding the subject project. Each page of R-50 and R-51 states, "LINTECH GLOBAL ◊ PROPRIETARY." Moreover, each of these documents refers to itself as a "proposal," stating, "Use of disclosure of data on this sheet is subject to restrictions on the title page *of this proposal*." (Emphasis added). Each document also indicates that one of its purposes is to provide "LinTech's *proposed pricing* . . ." (ECF No. 17, PageID.550; ECF No. 18, PageID.554) (emphasis added). Finally, unlike R-42, these documents contain LinTech's pricing information which is routinely considered to be a "trade secret" which, if known by a competitor, can give it an unfair advantage in bidding on projects.

For all of these reasons, the Court finds that the RFQ Documents are essentially equivalent to R-42, which the Arbitrator referred to as a "proposal."  Thus, each can be reasonably construed as a "proposal."  While the Court will address the contempt sanctions issue below, in light of the foregoing, the Court should find that its injunction applies to R-50, R-51, and R-52, and VPG should be ordered to return all hard copies, and to delete all electronic copies of this document, to specifically certify its compliance with that order, and to make no use or disclosure of the document or the information contained therein.

### C.      *VPG's Conduct Does Not Rise to the Level of Contempt*

To hold VPG in contempt, the Court would need to find, by clear and convincing evidence, that VPG violated "a definite and specific order" of the court.  *Cincinnati Bronze*, 829 F.2d at 591.  Since the Court's injunction order simply incorporated the arbitration Award's Trade Secret Protections, it is really that Award that the Court must deem sufficiently "definite and specific" to find VPG's non-compliance contemptuous.   In considering whether to enter an order of contempt, the Court must exercise caution and ensure it is not employing that power too hastily.  *Gary's Elec.*, 340 F.3d at 378; *In re Lane*, 2020 WL 9257958, at *2.  Having extensively considered the record here, the Court determines that a finding of contempt against VPG is not warranted.

Although the Court perhaps could find that VPG's conduct as to R-42 constituted contempt, that was the only document of the 15 Documents in issue that was specifically referred to by the Arbitrator as a LinTech "proposal."  And, as noted above, both parties missed that fact.  Determining whether the other 14 documents are "proposals" required far too much analysis, comparison, and deductive reasoning to say that the Award was

"definite and specific" as to those documents.  Finally, VPG's Rule 11 reply brief presented hearing testimony that at least creates a good-faith basis for its assertion that, notwithstanding the Arbitrator's characterization of R-42, "capabilities statements" are different than "proposals."  (ECF No. 34, PageID.788-89).  LinTech has a counter to that testimony and argument (ECF No. 35-2, PageID.834), but it simply highlights that a document can have multiple characterizations depending on the context.

For all of these reasons, the Court should deny LinTech's request for an order finding VPG in contempt.

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, **IT IS RECOMMENDED** that LinTech's motion to hold VPG in contempt **(ECF No. 6)** be **GRANTED IN PART AND DENIED IN PART** as follows:

- The Court should **GRANT** LinTech's motion to extent it seeks to enforce the prior injunction with respect to the documents specified below. Specifically, VPG should be ordered to return to LinTech any and all hard copies and delete any electronic copies of the following documents in VPG's possession or control:

  - the six documents not disputed by VPG: R-40, R-44, R-45, C-121, C-C-122, and C-199; and

  - the following documents discussed above: R-42, C-123, C-124, C-132, C-206, R-50, R-51, and R-52;

- VPG should be ordered to certify its return and deletion of each of the above documents;

- VPG should be ordered to make no use or disclosure of the above documents or the information contained therein;

- The Court should impose the same injunction against VPG as to any other documents in VPG's possession or control, which, under the above analysis, constitute LinTech's proposals, drafts thereof, and the DOD debriefing regarding LinTech's DEAMS ESA 2 proposal;

- VPG should not be ordered to take any action, or to refrain from taking any action, with respect to C-54;

**IT IS FURTHER RECOMMENDED** that the Court **DENY** LinTech's request to find VPG in contempt.

**IT IS FURTHER RECOMMENDED** that the Court **DENY** VPG's motion for Rule 11 sanctions against LinTech and its counsel **(ECF No. 30)**.

Dated: December 10, 2021        s/David R. Grand
Ann Arbor, Michigan              DAVID R. GRAND
                                  United States Magistrate Judge

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and Recommendation but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. W*illis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829

F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 10, 2021.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager